UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
THE SOUTH AFRICAN BREWERIES
PTY. LTD. F/K/A SOUTH AFRICAN BREWERS
LIMITED,

                    Plaintiff,

   - against –

ATLANTIC ENERGY NAVIGATION
LIMITED

                    Defendant.
-----------------------------------------------------------------X

Docket No.

Civ.

### DECLARATION OF PETER EDGCUMBE LAMB

1. PETER EDGCUMBE LAMB, an attorney licensed pursuant to the laws of South Africa do, under penalties of perjury, affirm as follows:

2. I am an attorney of Norton Rose Fulbright South Africa (incorporated as Deneys Reitz Inc.) , attorneys for THE SOUTH AFRICAN BREWERIES PTY. LTD. f/k/a South African Breweries , Limited (hereinafter " SAB"), the plaintiff herein and I make this declaration pursuant to my personal knowledge, as well as from documents, records contained in my files.

3. On May 12, 2014, our client SAB received an e-mail from the Wanchoo Law Offices acting as counsel for Atlantic Energy Navigation, Limited (hereinafter "ADL"), and referring to a charterparty between SAB and CSA L, Malta, Ltd. AEN demanded that the



dispute presently pending before the courts in South Africa (hereinafter the "South African litigation") be referred to arbitration in New York.

4. Between August 3 and August 5, 2008, at the port of Montréal, Canada, Canada Malting Co., Limited loaded cargoes of malt aboard the M/V Atlantic Navigator (hereinafter the "Vessel") for carriage and delivery to SAB at Durban, South Africa.

5. After loading of the cargo, two bills of lading were issued on behalf of the Master of the Vessel, copies of which bills of lading are annexed hereto as Exhibit 1(a) and 1(b).

6. When the Vessel arrived at Durban, South Africa, the cargo was discharged and delivered to plaintiff SAB in a damaged condition, causing SAB a loss in excess of US $4,500,000.

7. Accordingly, on September 12, 2008 SAB instituted a law suit in the High Court of South Africa, Durban and Coast Local Division against the M/V Atlantic Navigator *in rem*, (hereinafter the "South African Litigation") and obtained an arrest of the Vessel, which arrest was released upon the posting of security in the amount of US $4,500,000.

8. To digress slightly from the chronological order of the narrative, in the interests of clarity, in the South African Litigation complaint, SAB alleged, among other things, that it is a South African enterprise, carrying on business in South Africa; and that it was the named consignee under the bills of lading. It sued under the bills of lading, claiming that they evidenced a contract of carriage between it and the owners. The owners in their plea



subsequently delivered in that litigation relied upon the charterparty in question which contains the arbitration clause of which the owners now complain. The owners alleged that they were entitled to rely upon the charterparty as against SAB as the owners were undisclosed principals, entitled to emerge and rely upon the charterparty. SAB denied that the contract was governed by that charterparty (relying instead on separate contracts of carriage evidenced by the bills of lading) but claimed that if the charterparty was indeed the contract of carriage as claimed by the Defendant, then, in the alternative the owners were liable on that too. SAB further alleged that, notwithstanding the arbitration clause it was entitled to rely upon the charterparty in the South African litigation by virtue of Section 3 of the Carriage of Goods Act 1 of 1986 hereinafter South African COGSA) which applies to the exclusion of any arbitration clause in the charter party.

9. Section 3(1) of South African COGSA reads, in relevant part, as follows:

> (1) Notwithstanding any purported ouster of jurisdiction, exclusive jurisdiction clause or agreement to refer any dispute to arbitration, and notwithstanding the provisions of the Arbitration Act, 1965 (Act 42 of 1965), and of section 7 (1) (b) of the Admiralty Jurisdiction Regulation Act, 1983 (Act 105 of 1983), any person carrying on business in the Republic and the consignee under, or holder of, any bill of lading, waybill or like document for the carriage of goods to a destination in the Republic or to any port in the Republic, whether for final discharge or for discharge or for discharge for further carriage, may bring any action relating to the carriage of the said goods or any such bill of lading, waybill or document in a competent court in the Republic.

10. In all due respect, it lies ill in the mouth of the Defendant to now complain about the charterparty being relied upon in the South African Litigation, when AEN was the one who raised and relied upon that charterparty in the first place. In the circumstances it is



respectfully submitted that the Defendant has an ulterior motive in its 11th hour arbitration demand, and is seeking to derail the South African litigation in which it has fully participated for years, with full knowledge and intent, and to pressurize SAB in that litigation by making unsustainable and outrageous demands.

11. After filing and serving the complaint, SAB applied for and was granted access to inspect the Vessel in question (September 2008); SAB demanded that defendant Vessel and AEN produce certain documents relative to SAB's claim (September 2008); thereafter, SAB amended its summons (August 2009) and filed its full particulars to the complaint (September 2009).

12. Defendant then filed its answer to the complaint in the South African Litigation, and SAB replicated in February 2010. In September 2010 the parties first applied for a trial date, and in July 2012 the case was allocated dates and set down initially for trial to begin in October 2013.

13. Throughout this time the parties conducted disclosure such as the mutual discovery and production of documents (from December 2012), formal requests for further particulars designed to prepare for trial (June 2013) and replies to those requests (July 2013). Thereafter followed the mutual briefing of several experts on notice and the mutual exchange of expert reports on issues such as liability for the damage to the cargo (from September 2013). In October 2013, defendant amended an its plea to SAB's claim and the parties held numerous meetings to prepare for trial (July 2013 and April 2014



culminating in the reciprocal notices to produce further documents for purposes of trial (December 2013) and the production of those documents (April 2014).

14. Other than refer to the arbitration clause in its plea, AEN did nothing to enforce that arbitration clause. Indeed, had it wanted to do so, defendant AEN could have petitioned the South African Court to stay the litigation against the vessel to the extent it sought to enforce rights granted under the charter party. In that regard I respectfully refer to Point II (a) of the Memorandum of Law that is being submitted as part of SAB's motion. That Point has been drafted by me, and rather than repeat the contents in this affidavit, I incorporate the Point II(a) into this declaration.

15. Thus, from December 2009 until May 12 2014, defendant AEN neither sought to enforce arbitration of the cargo claim in New York nor appointed its arbitrator in accordance with the Rules of the Society of Maritime Arbitrators.

16. Significantly, the one instance in which defendant AEN, together with its alleged agent CSAL Malta, Ltd., actually commenced arbitration proceedings against SAB in New York, their claim was specifically limited to the recovery of demurrage and certain vessel "trimming" charges allegedly due and owing to AEN/CSAL. That arbitration was begun in 2008, well within the one year COGSA statute of limitations, and remained active until the demurrage and "trimming" charges were settled in October 2010; yet during that almost two year period, neither AEN nor CASL ever demanded that the cargo claim be made part of the arbitration.



17. On July 6, 2013he South African Litigation was called to trial and trial is presently scheduled to commence on June 2, 2014, less than two weeks away. To threaten discontinuance of the South African Legal Proceedings by interposing New York arbitration would not only represent a colossal waste of time and money, it would also seriously disrupt Plaintiff's ability to prove its case. Counsel has already been engaged and is due a fee whether the trial proceeds or not, witnesses, who include expert witnesses who have already confirmed their attendance and have made their travel arrangements from Canada, America, Australia and the United Kingdom, would be standing by, experts would be unnecessarily preparing themselves, and Plaintiff would lose credibility with the Court.

18. SAB's legal costs to date are approximately $330,000 and are increasing on a daily basis. This does do not include disbursements such as expert witness fees for past work and their fees for attending trial. We estimate that existing disbursements, the expert witness fees for the plaintiff SAB's witness to attend trial, counsel's fees and our fees to attend trial will be approximately an additional $300,000.

19. Defendant AEN is a "one ship corporation" and to facilitate the collection of judgment that might be rendered in SAB's favor SAB obtained a Letter of Undertaking from ACE European Group Limited on behalf of the M/V Atlantic Navigator, and a copy of that Undertaking is annexed as Exhibit 1 to the accompanying declaration of Caspar F. Ewig. Thus if any judgment plus accrued interest, attorney's fees and associated costs of



litigation exceed the amount of the Undertaking, SAB will have to apply to the South African High Court for additional security in terms of section 5(2) of the Admiralty Jurisdiction Regulation Act 105 of 1983, and in the event that such security is not forthcoming upon order by the South African High Court, SAB will be forced track the Vessel so as to arrest her, and SAB will be forced to incur additional costs for the application for additional security and arresting the vessel in the event she can be found.

I hereby declare that my testimony is given pursuant to the provisions of 29 U.S.C. § 1746, and I hereby declare that the aforesaid declaration was made by me under penalty of perjury under the laws of the United States of America and that the statements made therein are true and correct.

Dated:   Durban: South Africa   20   May   2014

                                                           Peter Lamb

                                                    _____

                                                 3 Pencarrow Crescent, Pencarrow Park
                                                 La Lucia, Durban