UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE SOUTH AFRICAN BREWERIES PTY. LTD. *f/k/a* SOUTH AFRICAN BREWERIES LIMITED, | **ECF CASE**<br><br>14 Civ. 3609 (JSR) |
| Plaintiff, | |
| -against- | **DECLARATION OF THAVARAJ REDDY** |
| ATLANTIC ENERGY NAVIGATION, LTD., | |
| Defendant. | |

THAVARAJ REDDY declares under the penalty of perjury under the laws of the United States, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1.      I am Senior Solicitor at Shepstone & Wylie, attorneys for defendant Atlantic Energy Navigation, Ltd. ("AEN") in the South African litigation between the parties herein. I make this declaration based on personal knowledge, as well as from documents and records contained in my files. I take this opportunity to address some of the statements contained in the declaration of Peter Edgcumbe Lamb dated 20 May 2014, as well as the Memorandum of Law submitted in support of the plaintiff's application for a preliminary injunction and temporary restraining order.

2.      I am astonished at the manner in which Mr. Peter Lamb has set out the "facts" in support of the order sought in New York. The contention he seeks to advance on behalf of SAB is that SAB's alleged claim under the charterparty has been the subject of litigation in South Africa for many years without objection from AEN who have consequently waived any right to require that the claim be subject to arbitration or to allege that the

proceedings in South Africa are a breach of that agreement to arbitrate in New York. The truth is quite different.

3.　　　What Mr Lamb suggests is the following:

3.1　　SAB commenced proceedings *in rem* in 2008 "under the bills of lading, claiming that they evidenced a contract of carriage between it and the owners";

3.2　　AEN responded relying on the charterparty (containing the arbitration clause in question), alleging that AEN were undisclosed principals;

3.3　　SAB denied this, but claimed that if the charterparty was the contract of carriage, owners will be liable under that contract as well – and in doing so further alleged that, notwithstanding the arbitration clause, section 3 of the South African COGSA permitted it to enforce the claim under the charterparty in the action in South Africa notwithstanding the arbitration clause; and

3.4　　that, "*In all due respect, it lies ill in the mouth of the Defendant to now complain about the charterparty being relied upon in the South African Litigation, when AEN was the one who raised and relied upon the charterparty in the first place.*"

4.　　　The declaration of Peter Lamb is clearly designed to convey to the New York court that, in the initial exchange of pleadings (ending in 2009 or at the very latest February 2010), SAB relied, in the alternative, on the charterparty – and AEN simply accepted that the claim under the charterparty should proceed in South Africa.  The picture painted by Mr. Lamb is quite clearly that AEN had acquiesced, for many years, in the claim being dealt with in the South African court without complaint, so that it is entirely inappropriate (and clearly for ulterior purposes) that AEN now suddenly seek to rely on the arbitration clause.

2

6.      Conspicuously absent from this narrative are a number of facts which reveal the true position is very different to that described in Mr. Lamb's Declaration. The position is as follows:

6.1      SAB arrested the "Atlantic Navigator" *in rem* in 2008. The claim advanced in the *in rem* summons was based in contract on the bills of lading with a claim in delict (tort) in the alternative;

6.2      In response to AEN's contention that, in fact, the contract of carriage between AEN and SAB was the charterparty (subject to New York arbitration), SAB expressly accepted this to be the case and on 24 September 2008, brought an application before the South African court seeking an order to the effect that any security provided by AEN to obtain the release of the vessel from the *in rem* arrest would necessarily have to be provided to secure not only the claims (under the bills of lading or in tort) advanced in the South African *in rem* action, but also the claim to be advanced under the charter party in New York. Arbitration. In that application, attorney Mr Malcolm Hartwell (of Norton Rose Fulbright and the attorney ultimately handling the South African litigation with the assistance of Mr Lamb in Durban) deposed to an affidavit in which he said

*"As appears more fully below, the Applicant has a cargo claim under either or both a bill of lading and a voyage charter party. The claim under the bill of lading has been instituted by way of an action in rem before this Honourable Court and the claim under the charterparty falls to be determined in New York arbitration. The applicant therefore requires security for both the action in rem and the New York arbitration and the order prayed is sought for that purpose."*

3

The order requiring that security for the release of the vessel answer to both the in rem action under the bill of lading and a claim under the charterparty to be advanced in New York arbitration was granted and security put up in accordance with that order.

I annex hereto: marked "A" a true copy of the court order granted by Mr Justice Jappie on 24 September 2008; marked "B" the relevant pages of the affidavit of Mr Hartwell in which the above quoted statements are made (in paragraphs 6 and 7); and marked "C" a copy of the letter of undertaking provided as security to secure the release of the vessel (and which expressly contains the provision regarding security for New York arbitration proceedings).

6.3     SAB, however did not take any steps to advance its cargo claim under the charterparty (in New York or South Africa), choosing to persist in South Africa only in the claim is based upon the bills of lading and, in the alternative, in tort.

6.4     AEN had defended the initial *in rem* action on the basis that, because the charterparty was the true contract between AEN and SAB;

6.4.1   the bills of lading were not contractual documents so that SAB simply had no contractual claim as was sought to be enforced – and that the contractual claim based on the bills ought to be dismissed; and

6.4.2   because of the existence of the charter party contract, SAB was not vested with any alternative claim in tort or delict, so that that alternative claim also felt to be dismissed;

6.5     AEN had, in its pleadings, simply pointed out that because of the existence of the charterparty contract between AEN and SAB, the claims sought to be advanced by SAB in

4

the *in rem* action could not be advanced.  (Any claim would have to be a contractual claim under the charterparty – and no such claim had been advanced).

      6.6     SAB did not in fact rely on the charterparty in the alternative at all.  Even the replication delivered in 2010 was designed to prevent any reliance by AEN on the charterparty contract.  Since SAB did not seek to advance any claim under the charterparty contract (in the alternative or otherwise) in the South African action, the arbitration clause was not an issue at all. SAB had security for New York arbitration proceedings should it seek to enforce the charterparty claim, but it did not do so.

      6.7     AEN advanced various claims for payment (for demurrage for example) under the charterparty against SAB.  To enforce those claims AEN commenced arbitration against SAB in New York, expressly recording that it was the true principal.

      6.8     Since SAB were not advancing any claims under the charterparty (content to claim under the bills of lading and in tort) it could hardly be suggested that AEN ought to have sought declaratory orders or the like in the arbitration.  AEN's position was that the claims advanced in South Africa should simply fail because the only potential claim, namely one in contract under the charterparty, was not being relied upon at all.

      6.9     It was in fact only in July 2013 (some 5 years later, and when the trial had already been set down for hearing in October 2013) that SAB sought to amend the claim in the *in rem* action to include the claim based upon the charterparty as the contract between the parties as an alternative.

      6.10     AEN certainly did not acquiesce. Not only did AEN object to this proposed amendment, but it expressly relied upon the provisions of the arbitration clause in doing so.  In the face of this opposition, SAB made formal application to amend the *in rem* claim

to include the charterparty claim and it was at this time that SAB relied upon section 3 of South African COGSA as a basis upon which it could ignore the contractual obligation to arbitrate in New York. In this regard I annex hereto, marked as annexure "D", a true copy of the affidavit of Vanil Stephen Bagwandeen (an attorney at my firm who is assisting me in the matter) dated 10 September 2013 filed in response to that of Mr Lamb in the application. It will be noted that the amendment was resisted on the basis that SAB had agreed to arbitrate in New York. I refer, in particular, to paragraph 8, in which it is recorded that

*"The advancing of the proposed claim in the South African proceedings would plainly constitute a breach of the terms of the charterparty, which expressly required that the proceedings be advanced only by way of arbitration in New York subject to American law. I am instructed to record the strongest objection on the part of the owner of the Defendant to such breach and to reserve the owner's rights, inter-alia, to recover any damages which it may suffer in consequence thereof."*

6.11    The matter was argued before a judge of the High Court in Durban. AEN's resistance to the incorporation of the charterparty claim in the South African proceedings was rejected, largely on the grounds of section 3 of South African COGSA, and SAB were granted leave to amend on the basis that SAB was in fact entitled to ignore the arbitration agreement.  The judgment was delivered *ex tempore* and has not been transcribed. I annex a true copy of the order hereto marked as "E".

6.12    Mr. Lamb ought to be fully aware of these facts, given that he deposed to all of the affidavits of SAB in this contested application in 2013.

6.13    Pursuant to this order and in October 2013, SAB amended its claim to include the charterparty claim.  AEN, as it was obviously then required to do, amended its plea to

6

respond to this claim. (Mr Lamb makes oblique reference to this amendment by AEN in paragraph 13 of his declaration, but makes no reference to the background is thereto.) In the plea responding to the introduction of the claim under the charterparty, AEN has pleaded *inter alia* that, the failure by SAB to advance its claim by way of arbitration in New York as it was required to do in terms of the charterparty had the result that it had waived its entitlement to proceed with the claim in South Africa.

7.     A reading of Mr. Lamb's declaration paints an entirely different picture. There is no reference at all to the contested application for an amendment. The contention advanced by Mr. Lamb in paragraph 14 of his declaration, namely that AEN could have petitioned the South African court to stay the litigation against the vessel to the extent it sought to enforce rights granted under the charterparty, is particularly surprising. That proposition could hardly be advanced if it had been disclosed that AEN had contested the introduction of the claim based upon the charterparty in September 2013 on the grounds that it ought to be advanced in arbitration New York as agreed, and the South African Court had permitted the introduction by SAB of that claim on the express basis that § 3 of South African COGSA precluded the South African court from enforcing the arbitration clause.

8.     The legal analysis contained in Point II of the Memorandum of the Law (of which Mr. Lamb is the avowed author) simply compounds the position. The entire case is based upon a gross distortion of the facts.

9.     Plaintiff argues that "[i]f the Court [South African court] is advised [of] the present demand it will have to stay the trial pending an arbitration in New York, or pending a determination by the U.S. Court that it will not allow the arbitration to proceed, and the Court will only allocate a new trial date that will be over two years after the finalization of the New

7

York proceedings." (See p. 9 of the MOL).  This is plainly incorrect.  The South African court will not stay the trial under the enumerated circumstances since it has already ruled that the plaintiff can ignore the arbitration agreement because of § 3 of South African COGSA (recited on pg. 2 of the MOL).  Therefore, the arbitration in New York will not affect the South African litigation.  I note this statement is only contained in plaintiff's MOL and it is not stated in Mr. Lamb's, the plaintiff's South African attorney's, declaration.

10.     Point I of the plaintiff's MOL contends that AEN is not entitled to arbitrate the plaintiff's cargo claim dispute because of § 3 of South African COGSA.  However, that statement is also not an accurate statement.  Section 3 gives the bill of lading consignee and South African citizen an option to litigate a cargo claim in South Africa, even if the governing contract of carriage requires arbitration of any dispute thereunder – that option is represented by the language "may bring any action relating to the carriage of the said goods…" in a South African court in § 3.  At the same time, § 3 does not preclude a party such as AEN or SAB (if it so chose) honouring its contractual obligation and seeking arbitration of a dispute under the charterparty.  Proceeding in South Africa remains a breach of the arbitration clause in the charterparty, it is simply that § 3 of South African COGSA precludes AEN objecting, before a South African court, to the action being pursued in South Africa on the basis of the agreement to arbitrate in New York.

11.     Finally, I would note that the relief sought by AEN in New York arbitration, per the demand letter of 12 May 2014, from the Wanchoo Law Offices, LLP, has not been asserted or sought by either party in the South African litigation.  As I understand, the relief sought by AEN in New York arbitration is:  (a) a finding that the plaintiff breached the terms and conditions of the charterparty by litigating its cargo claim in South Africa contrary to the

8

arbitration clause in the charterparty; and (b) a declaration that the plaintiff's cargo claim is now time barred in New York arbitration.  Neither of these issues is present in the South Africa litigation.



Executed on 22 May 2014, at Umhlanga Rocks, South Africa.

Thavaraj Reddy